UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AGUSTIN VARGAS-SALGADO, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Case No. 4:17CV02108 SNLJ |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Agustin Vargas-Salgado, a person in federal custody. On September 7, 2016, Vargas-Salgado pled guilty to the offense of Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine and Cocaine Base, and on November 30, 2016, this Court sentenced Vargas-Salgado to the Bureau of Prisons for a term of 120 months, a sentence within the sentencing guideline range. Vargas-Salgado's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## I. PROCEDURAL HISTORY

On September 7, 2016, defendant/petitioner Agustin Vargas-Salgado pleaded guilty before this Court in Case No. 4:10CR00302 SNLJ to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. (Docs. 412, 413). As part of the guilty plea agreement, the United States agreed that no further federal prosecution would be brought in this District relative to Vargas-Salgado's participation in a

conspiracy to distribute or possess with intent to distribute cocaine, cocaine base or marijuana, from November 2009 through June 10, 2010, of which the Government was aware and that it would forego the filing of an information pursuant to Title 21, United States Code, Section 851 detailing Vargas-Salgado's prior drug conviction.[1] See Guilty Plea Agreement, pp. 1-2.

Additionally, Vargas-Salgado waived his right to appeal the conviction and sentence in the event this Court sentenced him within or below the guidelines range. Guilty Plea Agreement, pp. 8-9. Vargas-Salgado further waived his right to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel. Guilty Plea Agreement, p. 9.

Following the entry of Vargas-Salgado's plea of guilty, this Court ordered the preparation of a Presentence Investigation Report (PSR). The United States Probation Office concluded that, after calculating the correct total offense level and criminal history category and applying the statutory mandatory minimum, the advisory sentencing guideline range was 120-121 months. PSR, ¶ 73. Neither Vargas-Salgado nor the Government objected to the PSR.

On November 30, 2016, this Court sentenced Vargas-Salgado to 120 months, the statutory mandatory minimum. (Doc. 422). That same day, Vargas-Salgado's attorney filed a Notice of Certification of Compliance with Local Rule 12.07, signed by Vargas-

---

[1] A Spanish translator interpreted all of the criminal proceedings for Vargas-Salgado, a Spanish speaker.

Salgado indicating that he had been fully informed of his right to appeal the final judgment, did not wish to file a notice of appeal, and instructed his attorney not to file a notice of appeal. (Doc. 424). Vargas-Salgado did not appeal his conviction; however, he filed the instant § 2255 motion on July 24, 2017.

## II. VARGAS-SALGADO'S GROUND FOR RELIEF

In the instant § 2255 motion, Vargas-Salgado argues that he received ineffective assistance of counsel because his defense counsel failed to file an appeal, and made "glaring and deliberate lies which misled" him. Memo in Support, p. 3. For relief, Vargas-Salgado requests "The Vacatur [sic] of the conviction and his case remanded to court for the holding of an evidentiary hearing to develope [sic] the record to resolve the disputed facts relating to the issues presented herein." Motion, p. 7.

## III. DISCUSSION

For Vargas-Salgado to prevail on his claim of ineffective assistance of counsel, he generally must establish that (1) counsel's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). An attorney's failure to file a requested appeal automatically satisfies the deficient-performance prong of *Strickland*, because it is "professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *see also Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007). No showing of prejudice is required because an attorney's failure to file a requested appeal amounts to the denial of counsel's assistance at a critical stage of the judicial proceeding. *See United States v. Cronic*, 466 U.S. 648, 659 (1984); *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir.

3

2000). The Eighth Circuit has extended this presumption of prejudice even to cases where, like here, a petitioner has waived his right to appeal. *Witthar v. United States*, 793 F.3d 920, 923 (8th Cir. 2015). So, if the evidence shows that a petitioner asked counsel to appeal and counsel refused, the petitioner is entitled to relief, even if he has waived that appellate right. *Id.*; *Watson*, 493 F.3d at 923. On the other hand, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477.

Thus, the question here is whether the record and evidence show that Vargas-Salgado requested an appeal and counsel refused or whether instead, Vargas-Salgado told his attorney not to file an appeal. In making that determination, "a petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (quoting 28 U.S.C. § 2255(b)). However, no hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id*.

A review of Vargas-Salgado's motion and supporting memorandum reveal the following allegations with respect to his assertion that he conveyed to his attorney a desire to appeal:

1. I told my lawyer that I want to appeal. But when I wrote to his[2] office, they told me that there was no appeal in progress. Motion, p. 3

---

[2] Vargas-Salgado repeatedly refers to his defense attorney as a male throughout his pleadings.

2. My lawyer led to believe that would appeal the conviction. Motion, p. 4

3. I told my lawyer Chastidy Dillon-Amelung for the purpose of the appeal, but apparently he failed to appeal the conviction. Motion, p. 5

4. Despite having been retained as counsel for appeal, attorney Chastidy Dillon-Amelung, inexplicable failed to file a notice to appeal, and instead, deliberately misled and lied to Petitioner that he would ultimately challenge his sentence. Memorandum in Support, pp. 1-2.

5. Vargas states that at the sentencing hearing, immediately after the court advised him that he had 14 days to file a notice of appeal, he told former counsel to file a notice of direct appeal. Memorandum in Support, p. 2.

6. Vargas avers that counsel never explained to him the advantages or disadvantages of taking an appeal. Memorandum in Support, p. 2.

7. Vargas clearly and adamantly requested to counsel that he wanted his 'unreasonable' sentenced [sic] to be appeal [sic]. Vargas avers that he tried calling the attorney, also two member [sic] of his family Anselma Vargas (sister) and Dora Juarez (daughter-in-law) but they never can reach him. Memorandum in Support, pp. 2-3.

8. Vargas was abandoned by an attorney who lay [sic] him and led him to believe that he would challenge his conviction and sentence in federal Court. Moreover, Vargas was affirmatively led to believe that this conviction was begin [sic] challenged in federal court, only to find out, after writing his attorney a letter, that such an endeavor was not pursued. (see exhibit #2). Memorandum in Support, p. 4.

9. Vargas avers that he was unaware that his attorney had not purse [sic] the direct appeal. Vargas avers that he realized him [sic] on his own, when he wrote him on June, 2017 seeking the status of his appeal. Memorandum in Support, p. 5.

As for documentation for his claims, Vargas-Salgado attaches Exhibit 2, a letter from his counsel, Chastidy Dillon-Amelung, that states, "This letter is in response to your inquiry regarding a Direct Appeal to the above referenced case number. I have verified with the court that no Appeal is pending for your case." Exhibit 2. He does not attach any

5

letter or specific allegation as to what the "inquiry regarding a Direct Appeal" was.

Vargas-Salgado's averments are largely vague, self-serving and speculative. He argues that he was "led to believe" certain things with respect to his appeal, but does not specify who led him to believe those things or what was said which led him to those beliefs. Additionally, it is not reasonable to believe that the first time he would have asked about an appeal of his November 30, 2016 sentencing would be in June of 2017.

Additionally, and even more importantly, the aforementioned claims directly contradict the record, and the attached affidavit of Vargas-Salgado's defense attorney, Chastidy Dillon-Amelung. The only remotely specific allegation regarding a desire to appeal the sentence Vargas-Salgado makes is that "at the sentencing hearing, immediately after the court advised him that he had 14 days to file a notice of appeal, he told former counsel to file a notice of direct appeal." However, this statement is directly contradicted by the filing of the Notice and Certification of Compliance with Local Rule 12.07 that same date. (Doc. 424). The form, bearing Vargas-Salgado's signature, specifically states, "I have been fully informed of my right to appeal the final judgment in this case, I do not wish to file a Notice of Appeal, and I have instructed my attorney not to file a Notice of Appeal." This is wholly inconsistent with Vargas-Salgado's current statement that, upon sentencing, he immediately requested the filing of a notice of appeal.

Additionally, Ms. Dillon-Amelung has provided an affidavit, attached hereto, and her recitation of the events surrounding Vargas-Salgado's lack of a desire to appeal are completely consistent with Vargas-Salgado's signed pleading. Specifically, Ms. Dillon-Amelung states, "At no time did Mr. Vargas Salgado request me to file an Appeal on his

6

behalf." *Id*. Additionally, she provides, "Mr. Vargas Salgado speaks very limited English and as a result, I had interpreter, Fernando Torres, present to review the 12.07(A) notice; with myself and Mr. Vargas-Salgado. Mr. Torres' presence was in addition to the Court interpreter present via phone." *Id*.

Ms. Dillon-Amelung's affidavit relays that the defense strategy was to cooperate with authorities by providing information in hopes that it would lead to a "substantial assistance" determination so that Vargas-Salgado could pursue a Rule 35 motion, not an appeal of his statutory mandatory minimum sentence. To that end, Ms. Dillon-Amelung has attached to her affidavit relevant documentation of that strategy for the Court's review.

The fact that Vargas-Salgado entered into an appeal waiver and was sentenced to the statutory mandatory minimum, while not determinative (as detailed above), is further evidence that Ms. Dillon-Amelung's recitation of the facts and the Notice signed by Vargas-Salgado that he directed her not to appeal are reliable. Vargas-Salgado's pleadings do not allege that he later changed his mind and requested that Ms. Dillon-Amelung file an appeal. Instead, the only specific request he says he relayed to her occurred immediately following the imposition of sentence. That is completely contradicted by his signed statement that he directed her not to file the appeal. Vargas-Salgado's other vague and conclusory statements similarly fail to refute the record in this matter, which instead indicates that he directed counsel not to file an appeal.

As such, counsel was not ineffective for following Vargas-Salgado's instruction. She

behalf." *Id*. Additionally, she provides, "Mr. Vargas Salgado speaks very limited English and as a result, I had interpreter, Fernando Torres, present to review the 12.07(A) notice; with myself and Mr. Vargas-Salgado. Mr. Torres' presence was in addition to the Court interpreter present via phone." *Id*.

Ms. Dillon-Amelung's affidavit relays that the defense strategy was to cooperate with authorities by providing information in hopes that it would lead to a "substantial assistance" determination so that Vargas-Salgado could pursue a Rule 35 motion, not an appeal of his statutory mandatory minimum sentence. To that end, Ms. Dillon-Amelung has attached to her affidavit relevant documentation of that strategy for the Court's review.

The fact that Vargas-Salgado entered into an appeal waiver and was sentenced to the statutory mandatory minimum, while not determinative (as detailed above), is further evidence that Ms. Dillon-Amelung's recitation of the facts and the Notice signed by Vargas-Salgado that he directed her not to appeal are reliable. Vargas-Salgado's pleadings do not allege that he later changed his mind and requested that Ms. Dillon-Amelung file an appeal. Instead, the only specific request he says he relayed to her occurred immediately following the imposition of sentence. That is completely contradicted by his signed statement that he directed her not to file the appeal. Vargas-Salgado's other vague and conclusory statements similarly fail to refute the record in this matter, which instead indicates that he directed counsel not to file an appeal.

As such, counsel was not ineffective for following Vargas-Salgado's instruction. She

instead followed the predetermined strategy of seeking a Rule 35 reduction in sentence, the only strategy that would allow for a sentence below 120 months.

"When a district court receives conflicting statements—one from a § 2255 petitioner and one from her former counsel—the court cannot 'mak[e] a factual determination based on the relative credibility of [these individuals] without the benefit of an evidentiary hearing.'" *Witthar*, 793 F.3d at 923 (quoting *Franco v. United States*, 762 F.3d 761, 765 (8th Cir. 2014)). However, here, this claim may be dismissed without an evidentiary hearing because the record "affirmatively refutes the factual assertions upon which it is based." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).

This case is distinguishable from cases like *Witthar v. United States*, 793 F.3d 920 (8th Cir. 2015), and *Franco v. United States*, 762 F.3d 761 (8th Cir. 2014), where the district court received conflicting affidavits from the defendant and the attorney. In those cases, neither affidavit was, on its face, more credible than the other. Here, Ms. Dillon-Amelung's affidavit contains dramatically more specificity as to the lack of a request to appeal and the explanation of an alternative strategy. Ms. Dillon-Amelung's affidavit is corroborated by the record filings and the fact that Vargas-Salgado's chances of challenging the reasonableness of his sentence on appeal would have been barred by the appeal waiver and rejected under current law, which clearly holds that the statutory mandatory minimum sentence is not unreasonable.

On the other hand, Vargas-Salgado's affidavit is vague and conclusory and is in direct contradiction with his own signed statement (made with the assistance of a translator). While generally § 2255 entitles a movant to a hearing on the merits of his petition, there

is a well-established exception to this rule when the files and records of the case conclusively show that the petitioner is not entitled to relief.  *Hodges v. United States*, 368 U.S. 139, 140 (1961); *Check v. United States*, 858 F.2d 1330, 1333 (8th Cir. 1988). This appears to be such a case.

## CONCLUSION

For the foregoing reasons, the § 2255 Petition is dismissed.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Vargas-Salgado has not made a substantial showing of the denial of a federal constitutional right.

Dated this 25th day of September, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE